**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DANNY FREEMAN                                    CASE NO.  1:05cv179

                    Plaintiff                    JUDGE MICHAEL R. BARRETT

       -vs-

CINCINNATI GAS & ELECTRIC
COMPANY,

                    Defendant

**FINAL JUDGMENT AND ORDER**
**APPROVING SETTLEMENT**


       This matter came before the Court on the Proposed Settlement Agreement.  The

Court shall give final approval to the Settlement Agreement of a class action if, following

a hearing, the Court determines that the settlement is "fair, reasonable and adequate."

Federal Rule of Civil Procedure 23(e)(1)(C).  In making this determination, the Court

evaluates the proposed class action settlement in light of the general federal policy favoring

the settlement of class actions.  *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583,593

(E.D. Mich. 2006).

       Several factors guide the Court's inquiry into whether or not the proposed

Settlement Agreement is fair, reasonable and adequate, including:

       1.      the likelihood of success on the merits;

       2.      the complexity, expense and likely duration of the litigation;

       3.      the amount of discovery engaged in by the parties;

1

4.      the opinions of class counsel and class representatives;

5.      the risk of fraud or collusion;

6.      the reactions of absent class members; and

7.      the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

The fundamental question "is whether the parties are using settlement to resolve a legitimate legal and factual disagreement."  *Id*. at 632.

The Court's role "is not to decide the merits of the case or resolve unsettled legal questions," and is "not to decide whether one side is right or even whether one side has the better of the arguments," but it "is rather to weigh the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."  *Id*. at 631-32.  In assessing the settlement, the Court must determine "whether it falls within the range of reasonableness, not whether it was the most favorable possible result in the litigation."  *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. 297, 319 (N.D. Ga. 1993) (citations omitted).

The burden of showing fairness is on the proponents of the settlement.  *In re General Motors Corp. Pick Up Truck Fuel Tank Products Liability Litig*., 55 F.3d 768, 785 (3rd Cir. 1995).  Moreover, "whether a settlement is fair, reasonable and adequate must be evaluated by examining the settlement in its entirety and not as isolated components . . . [and] the court does not have the power to change [any of] the terms of the proposed settlement which it may not like."  *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D.  240, 245-46 (S.D. Ohio 1991).

2

The Court being aware of the facts of this case, having conducted certain discussions with the parties' counsel, having read the briefs in support of the settlement agreement and having heard argument on the objections at a Fairness Hearing which was conducted in open court on September 23, 2009 and having evaluated under the applicable standards finds the proposed settlement agreement is fair, reasonable and adequate.

## Background

Plaintiff, Danny Freeman, for himself and on behalf of a class, sought damages and injunctive relief based on claims of nuisance, trespass, loss of quiet enjoyment, and alleged statutory violations related to the operation of the Zimmer Power Generating Station. After preliminary discovery, the Court issued an Opinion and Order certifying the class under Federal Rules of Civil Procedure, Rules 23(b)(1), 23(b)(2) and 23(b)(3). The Court's December 28, 2006 Order defined the Class as follows:

> The Class shall consist of owners, whether direct or beneficial, of real property located in the Village of Moscow, Clermont County, Ohio, including property owners in the immediate vicinity of the Village of Moscow, that are being struck by particulate matter and/or fugitive emissions from CG&E's Zimmer operation and who as a result have suffered a diminution in value to the property. Excluded from this class is property owned by defendant CG&E, property owned by any public entity (including but not limited to the Village of Moscow), and property owned by Cinergy or any of its affiliated entities.

Notice was given to potential class members on or about June 26, 2007, and after a proper period for potential members to exclude themselves, approximately one hundred and one (101) members continued with the litigation.

The Class Members contend that because of the operations of the Zimmer

3

Generating Station ("Zimmer") they have suffered diminution in the value of their property as a result of a nuisance and/or trespass under Ohio state law, all as alleged in their Complaint filed on March 18, 2005, and consolidated with their Complaint filed in Case No. 1:05CV00442. (the "Litigation"). Defendant has and continues to deny any and all liability arising under or relating to the Litigation and any damages.

During the four years this matter has been pending, the parties have engaged in discovery, including an extensive investigation of the facts and circumstances underlying the allegations made in the Complaint. Plaintiffs have conducted formal and informal discovery and incurred costs of not less than $184,798.66. To date, twenty-nine (29) depositions have been taken and tens of thousands of documents have been exchanged in discovery.

Plaintiffs' counsel had to develop additional expertise and working knowledge in complicated scientific areas, engage various experts and master complex regulatory schemes and law. They have also held numerous status conferences and multiple mediation sessions with plaintiffs. Plaintiff has now evaluated the additional expected expense and time necessary to prosecute the Litigation, the relevant legal arguments, and the amount of potential recovery; has taken into account the defenses raised and the uncertainties of predicting the outcome of this Litigation; and advises that further proceedings against Defendant will be protracted and expensive, and that the result remains uncertain.

This Court is aware that Defendant has vigorously defended this action, and that Class Counsel has pursued the class claims with equal zeal and dedication. The proposed settlement is the result of almost a year of negotiation and is the product of arm's-length

4

negotiation process, that in part, was observed by the Court.

On June 8, 2009, this Court reviewed the proposed settlement, granted the Unopposed Motion for Preliminary Approval of Settlement Agreement, approved notice procedures and language and set a final fairness hearing for September 23, 2009. The notice process included both direct U.S. mail notification and legal notice publication in a newspaper circulated within the affected community.

The proposed settlement is comprised of both a monetary settlement fund and a non-monetary undertaking by Defendant as it relates to Zimmer. Class members were given a separate opportunity to opt out of the monetary portion of the proposed settlement following the Court's preliminary approval of the Settlement Agreement. Only three eligible class members elected to exclude themselves from the monetary settlement. While opt outs were not permissible on the settlement's non-monetary portion, all class members were given an opportunity to file formal objections. The same three class members have done so and the objections as filed are identical in substance and wording, allege that the non-monetary settlement portion does not provide sufficient oversight.

<u>The Notice Procedures Exceeded the Requirements of Due Process and Rule 23</u>

The Court finds that notice has been given and that the Notice was reasonable and adequate to inform the intended members of the nature of the settlement. Federal Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Class Counsel published Notice of the Settlement in the <u>The Clermont Sun</u> on June 25, 2009 and again on July I, 2009 for a total of 2 consecutive publication days, as required by the Settlement Agreement and preliminary order of approval. In addition, on June 19, 2009,

5

Class Counsel mailed notices to property owners who had not opted out during the initial class certification period via regular U.S. mail in accordance with the Settlement Agreement and preliminary order of approval.

The Court finds that the Notice of Proposed Settlement and Fairness Hearing was the best notice practicable under the circumstances and was fair and reasonable. It described the nature of the settlement, the exclusion, objection and claims procedures and noticed Class Counsels' intent to seek fees and costs, an award for the Class Representative and the date of the fairness hearing. The effectiveness of the Notice is further demonstrated by the fact that individuals not originally known to be members of the Class were identified and included as a result of the Notice. The Notice procedures implemented in this case more than adequately satisfy due process standards.

## Fairness of the Settlement

The Court finds that the settlement is fair, adequate, and reasonable and is not the product of collusion between the parties. In reaching this conclusion, the Court has considered a number of factors.

### The Settlement Supports the Public Interest and Provides Adequate Benefit

"There is a strong public interest in encouraging settlement of complex litigation and class-action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antiftrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003), *citing Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). The monetary benefits speak for themselves and aging populations would be at risk of suffering significantly reduced health insurance. Accordingly, the public interest favors the settlement. Class Counsels' efforts have resulted in a proposed settlement that

6

provides relief in two ways and the Court finds both parts of the settlement are fair, reasonable, adequate and beneficial to the class.

Claims for injunctive and equitable relief brought under Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2), were settled by certain measures as outlined in Exhibit D. These non-monetary measures memorialize upgrades to the equipment and facilities in use at the Zimmer Power Generating Plant including the replacement of mist eliminators and work on the chimney liner, both which will be done, in part, in an effort to further reduce moisture in the plume. Defendant will continue to operate its existing mitigation system and study improvements to the same to further control or maintain control of sulfuric acid emissions. Finally, Defendant will operate a dedicated phone line and follow agreed-upon procedures for members of the neighboring community to communicate with Zimmer.

The intent of the Settlement Agreement was not to restrict Zimmer in its operations, particularly as new technology emerges or developments occur that are superior to those Zimmer currently uses or which may be mandated by law. Zimmer continues to be subject to an operating permit, regulatory oversight and may factor in both changes laws/regulations and operational changes in its performance of Exhibit D.

The Settlement also includes substantial Monetary Relief in the form of payment of $900,000 into a class settlement fund from which Class Members can receive a cash payment and satisfy all attorney fees and costs of litigation and settlement. There are 98 Class Members who have elected to receive payment. The Settlement provides each eligible individual Monetary Settlement Class Member with an approximate recovery of $3,879.61 in addition to the equitable non-monetary benefits of the Settlement.

7

<u>Likelihood of Recovery at Trial Compared to the Settlement Agreement</u>

"The likelihood of success. . . provides a gauge from which the benefits of the settlement must be measured."  *General Tire & Rubber Co. Sec. Litig.,* 726 F.2d 1075. 1086 (6th Cir. 1894).  "The ultimate question. . . is whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *UAW v. General Motors Corp.*, 2006 WL 89115 at *15 (E.D. Mich. 2006), *aff'd* 497 F.3d 615 (6th Cir. 2007).  "It is neither required, nor is it possible for a court to detertmine the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable." *Id*.

The parties agree that each faces risks and uncertainties if the case were to go to trial.  Defendant intends to vigorously defend the action and as a result, the Class Members face a risk of not prevailing on the merits, which could result in zero recovery for the class.  In contrast, under the settlement, the Class Members will receive benefits, which will compensate them for the alleged damages they experienced due to the alleged actions or omissions of Defendants and help avoid or ameliorate future issues.

<u>Complexity, Expense and Duration of Litigation</u>

As noted this matter presents issues that require scientific, engineering and real estate experts, large document production and handling and numerous depositions.  The Court notes that at the time the Court was noticed of the potential settlement by the parties, the discovery process had been underway for a number of years and was still ongoing. For all parties concerned, settlement is a desirable alternative to continuation of such complex, expensive and uncertain litigation.

## Judgment of Counsel

As a threshold matter, "courts presume the absence of fraud or collusion, unless there is evidence to the contrary." *UAW v. General Motors Corp*., 2206 WL 89115, at *21 (E.D. Mich. 2006) (citations omitted).  No such evidence exists in this case.  Moreover, where the Court is involved in helping the parties settle a case, there is "no risk of fraud or collusion among the parties." *Moran v. Wunderlich*, 2007 WL 3005235 at *2 (S.D. Ohio 2007); *see also, In Re Delphi Corp. Securities, Derivative & ERISA Litigation*, 2008 WL 125798, at *13 (E.D. Mich. 2008).  And, ultimately, "the primary test of collusion is whether the proposed settlement itself is fair, adequate and reasonable." *White v. Morris*, 811 F. Supp. 341, 343 (S.D. Ohio 1992); *see also Bowling v. Pfizer, Inc.* 143 F.R.D. 141, 152 (S.D. Ohio 1992).

The Court is absolutely confident that the Settlement Agreement arose out of arms-length negotiations.  This finding supports approval of the settlement.

Each of the parties has been represented throughout this litigation by competent counsel experienced in complex litigation. The Court has seen counsel engage in intellectually honest and vigorous debate over the numerous issues of liability and damages.  It is their considered judgment that the case should be settled.  The settlement itself was reached after nearly twelve months of arms-length negotiation between counsel, involving numerous meetings and mediations.  The settlement manifests no evidence of bias, collusion, or coercion in favor of any party or subgroup of Class Members.

## Stage of the Proceeding

The proceedings to date provide an adequate basis for an informed settlement.  The parties litigated the case actively for four years and negotiated for one year before agreeing

9

upon a proposed settlement.  The Settlement was reached only after Class Counsel completed extensive research regarding the complex legal and scientific issues involved in this case, investigated Defendant's alleged conduct and defenses, including deposition and paper discovery and analysis of the damage calculation for the class and numerous hours of meetings and mediations.

The Court is aware that the Class Representative, Danny Freemen, has been actively engaged throughout the litigation and the settlement negotiations.  The Court has thoroughly discussed the proposed Settlement directly with the Class Representative during the preliminary approval process, and finds him to be knowledgeable of the subject matter, fully informed of the terms of the proposed Settlement, considered of the pros and cons thereof, appropriately concerned about the interests of his fellow class members, and fully supportive of the terms of the proposed Settlement.

<u>The Objections to the Settlement Agreement Are Unavailing</u>

"Although the court should consider objections to the settlement, the existence of objections does not mean that the settlement is unfair. . . [and] it is clear under the applicable law that even majority opposition to a settlement cannot serve as an automatic bar to a settlement that a district judge, after weighing all the strengths and weaknesses of the case and the risk of litigation, determines to be manifestly reasonable.  *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1018 (S.D. Ohio 2001).

The Court preliminarily approved the Settlement and no intervening events have occurred that would cause the Court to reconsider that preliminary approval.  There have been only three opt outs and three filed objections.  The filed Objections are identical and state that the "Settlement agreement does not provide for oversight on any settlement

agreements on Exhibit D of settlement." At the fairness hearing, the objectors who spoke (Gary Skeen and Dennis Skeen) expanded the Objections to voice health concerns, monetary concerns and a general distrust of the Defendant organization. Even though they cited specific anecdotes, the complaints remain vague and unsupported by the record. Therefore, the Court having considered the record, the agreement, the arguments of the parties and all other matters relevant to the objections find that they are without merit and should be overruled. The Settlement Agreement expressly provides for the enforceability of the Exhibit D commitments by Class Members. Specifically, paragraph IV(B) of the Settlement Agreement states "any Class Member is entitled to seek enforcement of the commitments set forth in Exhibit D, whether or not such Class Member files a claim to recover from the Settlement Recovery Fund." The Settlement Agreement also specifically provides that this Court "shall retain continuing and exclusive jurisdiction over the Parties and over the administration and enforcement of the Settlement Agreement." The Court also takes notice of the fact that the Zimmer Station remains under significant governmental oversight and regulation.

<u>Attorneys' Fees, Costs and Incentive Award for Class Representative</u>

Plaintiff has filed and properly noticed a Motion and application for attorney fees, costs a class representative incentive award. Plaintiff seeks an award of $330,000 in attorneys' fees and $184,798.66 in costs, pursuant to the terms of the Settlement Agreement. Plaintiff has requested that the Class Representative be awarded $5,000 for his services in this case. The test is whether an award is reasonable under the circumstances. There are at least six factors to consider in determining the reasonableness:

11

1.      the value of the benefit rendered;

2.      society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

3.      whether the services were undertaken on a contingent fee basis;

4.      the value of the services on an hourly basis;

5.      the complexity of the litigation; and

6.      the professional skill and standing of counsel on both sides.

Applying these factors, and after careful review of Plaintiff's Motion and supporting materials, the Court approves an award of attorneys' fees and costs in the amount of $330,000. Class Counsel has secured a Settlement that has a monetary settlement fund of $900,000.00 for the benefit of the Class, plus substantial non-monetary ameliorative measures that include upgrades, improvements and studies of better control equipment for Zimmer, as outlined in Settlement Exhibit D. Even though substantial non-monetary relief was gained by the efforts of counsel, the requested fees represent only 36% of the monetary portion ($900,000) of the total settlement for the Class.

Plaintiffs' award is particularly justified under the circumstances and in light of the level of risk involved in this action. The settlement is the result of Class Counsel's efforts prosecuting a complex and hard-fought suit. Class Counsel devoted substantial time and resources to developing the issues and litigating the matter over many years and originally undertook the litigation on a contingency basis with risk of recovering nothing. The level of complexity was compounded by the subject matter, which required counsel to gain a working knowledge of complicated scientific principles and information and to master a thicket of environmental regulatory and statutory law. The requested fees are less than the

12

value of actual time spent. The Settlement also eliminates the significant risk of a non-recovery or recovery of an amount substantially less than the Settlement. Without Class Counsel, who was willing to assume the task, members of the Class may have recovered nothing or would have been unable to pursue their claims. The attorneys working on the matter have considerable experience in state and federal court and possess specialized knowledge relating to complex litigation, class actions and environmental law and engineering. The quality of the representation is also demonstrated by the substantial benefit achieved for the Class Members under the difficult circumstances presented in this action.

The Court also finds that an award of costs to Plaintiff of $184,798.66 is appropriate.

The Court also finds that an incentive Award of $5,000 for Class Representative Danny Freeman is reasonable and appropriate under the circumstances and in recognition of his years of services and frequent efforts which have included depositions and court appearances.

### Additional Included and Exclude Persons

The Court has been requested to rule on the eligibility of six individuals who have received notice and request inclusion in the Class and participation in the Settlement. The Court has considered the request of each individual and finds and orders the following:

1.      Mr. John E. Jones, Sr. was only omitted from the original Class list by a clerical error but at all times met the Class definition, submitted a timely claim and should receive a settlement distribution and be counted in the Class for all purposes.

13

2.      Mr. James A. Shriver, Trustee, was not originally identified as a potential Class member because of the absence of his name in the public record, but at all times met the Class definition, submitted a timely claim and should receive a settlement distribution and be counted in the Class for all purposes.

3.      Mr. and Mrs. Dennis and Deborah Clepper submitted a timely claim form, but acquired ownership of their property and moved to the affected property after the Class was established and the litigation underway.  Therefore they are not eligible to be included as Class members and should be omitted from the list of Class members for all purposes.

4.      Ms. Gail Burnam was an eligible Class member who received notice, but failed to return her claim prior to the deadline date.  Given that she has manifested her desire to participate in the settlement distribution and that no prejudice to the remaining Class members has been identified that would result from her inclusion in the monetary settlement distribution, the Court orders that her form be considered timely and that she receive a settlement distribution.

5.      Mr. Brian Mills and Scott Wells submitted timely claim forms even though they are not the legal owners of record.  These individuals have reportedly been in possession of the respective properties at all relevant times since the action commenced, but are merely children or potential heirs of the deceased owners of record.  Although the Court deems it curious that the titles to the effected properties have never been probated, the Court recognizes that this is a deficiency that may be cured.  The Court therefore orders that the distribution shares for these affected properties should be held in escrow by Class Counsel until a period of ninety days from the date of this order has expired.

14

If probate is commenced during this period, with proper notice given to Class Counsel, then Class Counsel shall include the estates' executor or the legal heir as eligible for a distributive share and include that individual(s) in the list of Class members for all other purposes.  Should no probate or legal heir be identified then the distributive shares should be considered unclaimed, the properties omitted, and the distributive shares to pass with the Residual.

<u>Settlement Residual</u>

The residual payment under the terms of the Settlement Agreement is to be paid to the Village of Moscow solely for the benefit of the Moscow Community Center.  This payment has a potential benefit to entire class, as the Community Center is located in the affected community and can be utilized by and for the benefit of the public, including all class members.  The Court finds this to be an appropriate and beneficial disposition of the residual of the settlement fund. To effectuate this part of the Settlement, no part of the residual should be paid to the Village until sufficient commitments have been obtained from the Village by Class Counsel and filed with the Court to ensure that the payment is used solely for the benefit of the Moscow Community Center.  If a satisfactory commitment cannot be obtained, then the parties should advise the Court.

Accordingly, the Court finds that the settlement is fair, adequate, and reasonable. Therefore,

1.      The Proposed Settlement Agreement is approved.

2.      Plaintiffs' counsel is awarded $330,000 for attorney fees and $184,798.66 in costs payment to be made as specified in the Settlement Agreement.

15

3.      Danny Freeman is awarded $5,000 as an incentive award for his work and time spent as Class Representative, payment to be made as specified in the Settlement Agreement.

4.      All eligible class members who returned a timely clam form be paid a distributive share from the remaining $380,201.34 in the Settlement Fund to be calculated using the number 98 as the divisor.  John E. Jones Sr., James Shriver, Trustee, and Gail Burnam shall be included in the class for all purposes including payment.

5.      Legal owners or estate representative for the real properties currently occupied and represented by Brian Mills and Scott Wells may be included in the class and receive a distributive share if they present the necessary legal documentation within ninety days of this order.

6.      That Deborah and Dennis Clepper shall be excluded from the class for all purposes.

7.      The Objections of Dennis Skeene, Gary Skeene and Dawn Walden are overruled and denied.

8.      Upon Class Counsel securing sufficient commitment from the Village of Moscow or other appropriate entity to ensure that the residual payment is dedicated to the sole benefit of the Moscow Community Center and filing the same with the Court, the residual shall be paid to the City or its appropriate designee, as contemplated by the Settlement Agreement.  This provision, including the dedication of the residual payment to the sole benefit of the Moscow Community Center, shall be enforceable as provided by Fed. R. Cr. P. 71.

9.     That this matter is hereby **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 41.

10.     The period for appeal from this ruling shall expire thirty (30) days from the entry of this Order and all persons filing a notice of appeal shall post a bond of $900,000.

11.     This Court shall retain jurisdiction over the enforcement of the Settlement Agreement.

**IT IS SO ORDERED**.

_____*/s/ Michael R. Barrett*_____
MICHAEL R. BARRETT, Judge
United States District Court

17